[Civ. No. 20836. Fourth Dist., Div. Two. Jan. 22, 1980.]

THE PEOPLE ex rel. KEITH GOW, as City
Attorney, etc., Plaintiff and Respondent, v.
MITCHELL BROTHERS' SANTA ANA THEATER
et al., Defendants and Appellants.

298

## COUNSEL

Joseph Rhine for Defendants and Appellants.

James J. Clancy for Plaintiff and Respondent.

## OPINION

TAMURA, J.—The City Attorney of the City of Santa Ana brought an action in the name of the People against the owners and operators of the Mitchell Brothers' Santa Ana Theater to enjoin the exhibition of a number of allegedly obscene motion pictures as a public nuisance. On plaintiff's motion, the court granted a preliminary injunction enjoining the showing of the films pending a final determination of their obscenity vel non. Defendants appeal from the order granting the preliminary injunction.

The complaint alleged that certain named feature length films and their previews being shown at the Mitchell Brothers' Theater in Santa Ana were obscene under the Penal Code section 311 definition of "obscenity" and that the exhibition of such films constituted a public nuisance.[1] Following the filing of the action, the People made a motion for a preliminary injunction which was heard by Judge Hamilton on October 23, 24, 25, and 26, 1978. During the course of the hearing, the judge viewed 8 of the 26 films sought to be enjoined and the parties stipulated that the rest of the films were substantially the same in nature and content as those which the judge had viewed. Among the films viewed by the judge were "Deep Throat," "Devil in Miss Jones," "Roller Babies," and "Summer of Laura." Defendants requested the

---

[1]Penal Code section 311, subdivision (a), provides: "(a) 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance."

court to take judicial notice that "Roller Babies" and "Summer of Laura" had been determined to be nonobscene in a civil public nuisance action brought by the City Attorney of Santa Ana against certain of the same defendants and that "Deep Throat" and "Devil in Miss Jones" had been found to be nonobscene in an earlier misdemeanor prosecution in Orange County against defendants not parties to the instant action.

On November 2, 1978, Judge Hamilton filed a signed order in which he found that all of the films and previews listed in the application for preliminary injunction were obscene under the Penal Code section 311 definition of "obscenity" and granted a preliminary injunction prohibiting defendants from exhibiting or advertising any of the films or their previews during the pendency of the action or until otherwise ordered by the court. In the same order, the judge ordered defendants to appear on December 8, 1978, "for the hearing on the final injunction and at that time,...show cause, if they can, why a permanent injunction should not be issued...."[2]

Defendants moved to reconsider the granting of the preliminary injunction and that motion was set for hearing concurrently with the order to show cause why a permanent injunction should not issue. Both matters came on for hearing on December 18, 1978, before Judge Wisot. The judge denied the motion to reconsider the issuance of the preliminary injunction and ordered the show cause hearing on the permanent injunction off calendar without prejudice to the right of either party to have the cause set for trial on the merits in the manner prescribed by the Code of Civil Procedure. The judge expressed the view that the case could not be brought to trial by an order to show cause and that furthermore defendants were entitled to a jury trial on the issue of obscenity.

---

[2]The order stated in pertinent part: "IT IS HEREBY ORDERED that during the pendency of this action, until the Court shall otherwise order, the Defendants Wayne Babiash and Gaylord Johnson and each of them, and their agents, servants, employees, and representatives, and all persons acting in concert or participating with them, shall be, and hereby are enjoined and restrained from engaging in or performing, directly or indirectly, any and all of the following acts at the Mitchell Brothers' Santa Ana Theater: Advertising or exhibiting any of the above-described motion picture films and previews, or any part thereof.

"IT IS FURTHER ORDERED that the defendants appear before this Court at 9:30 A.M., on December 8, 1978, in Department 15, for the hearing on the final injunction and at that time, or as soon thereafter as the matter can be heard, show cause, if they can, why a permanent injunction should not be issued by this Court and why this Court should not grant further relief as prayed for in the plaintiff's complaint in the civil action on file herein."

On December 26, 1978, defendants filed their notice of appeal from the November 2 order granting the preliminary injunction.[3]

Defendants contend that the case of *In re Ward* (1978) 82 Cal. App.3d 981 [147 Cal.Rptr. 476], to the contrary notwithstanding, a preliminary injunction may not issue in an action brought by the People under the state's public nuisance statutes to enjoin the exhibition of allegedly obscene films. Defendants also contend that the court abused its discretion in granting the preliminary injunction because it is not reasonably probable that the People will prevail in the action. Defendants argue that inasmuch as the facts of which the court was requested to take judicial notice show that four of the eight films which the judge viewed had been found not to be obscene in prior litigation and since the parties stipulated that the films which the judge did not view were substantially similar in nature and content to those he had viewed, it is unlikely that the People will prevail in the trial on the merits. In a related contention, defendants contend the People are collaterally estopped from relitigating the obscenity of the four films and that therefore at a minimum the preliminary injunction should be modified to delete them from the order. In the ensuing analysis, we have concluded that defendants' contentions lack merit and that the order granting the preliminary injunction should be affirmed.

I

THE PROPRIETY OF THE PRELIMINARY INJUNCTION

In *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600] (U. S. cert. den. in 429 U.S. 922 [50 L.Ed.2d 289, 97 S.Ct. 320]), our Supreme Court sanctioned the use of the public nuisance statutes[4] as a means of regulating

---

[3]The record has been augmented to show that at a trial setting conference held on July 27, 1979, the case was set for trial for January 22, 1980. The augmented record shows that in June 1979, defendants filed a "COUNTER AT-ISSUE MEMORANDUM AND SUPPORTING DECLARATIONS" in which they opposed an early trial setting, stating: "This case is not entitled to legal preference in setting. As noted in plaintiff's At Issue Memorandum, a Preliminary Injunction has issued in this action. Since the nature of this case, as stated by plaintiff's At Issue Memorandum is a 'Complaint in Equity for an Injunction and to Abate a Public Nuisance', plaintiff is presently enjoying, prior to trial, the relief he will seek at trial, and consequently there is no necessity for legal preference."

[4]The public nuisance statutes referred to in *People* ex rel. *Busch* v. *Projection Room Theater, supra*, 17 Cal.3d 42, were Civil Code sections 3479, 3480, and Penal Code sections 370, 371.

the exhibition of obscene materials provided that the statutes are used "in such a way as to operate in a constitutional fashion." (*Id.*, at p. 55.[5]) The court rejected the argument that abatement of the exhibition of obscene materials under the state's public nuisance laws would violate the constitutional principle against prior restraint of presumptively protected materials. The court observed that a prior restraint is constitutional if it occurs under proper safeguards designed to avoid the dangers of censorship and noted that the state's public nuisance statutes do not provide for "specific forms of relief" as does the Red Light Abatement Law but instead permit a court of equity to fashion an injunction "proper and suitable to the facts of each case." (*Id.*, at p. 57; italics deleted.) "Thus," the court went on, "in the matters before us if the trial court finds the subject matter obscene under prevailing law an injunctive order may be fashioned that is 'proper and suitable' in each case. It is entirely permissible from a constitutional standpoint to enjoin further exhibition of specific magazines or films which have been finally adjudged to be obscene following a full adversary hearing. [Citations.]" (*Id.*, at pp. 57-58.)

Defendants point to the quoted language, particularly the phrase "finally adjudged to be obscene following a full adversary hearing," in support of their argument that the Supreme Court was indicating that injunctive relief pendente lite is impermissible in an action to abate the exhibition of presumptively protected materials. The identical contention, however, was squarely presented to, and rejected by, the Court of Appeal in *In re Ward, supra*, 82 Cal.App.3d 981, 985. The *Ward* court held that the quoted language from *Busch* related to a permanent injunction and was not intended to foreclose the granting of a preliminary injunction as long as the procedural safeguards against prior restraints are observed.

The procedural safeguards which are constitutionally required to obviate the danger that a system of prior restraints will run afoul of the

---

[5]A number of states have passed statutes specifically providing for injunctive relief against the exhibition or dissemination of obscene materials. (E.g., Conn. Gen. Stat. Ann., § 53a-199 (West 1972); Mass. Gen. Laws Ann., ch. 272, § 30 (West Supp. 1976); N.Y. Civ. Prac. Law, § 6330 (McKinney Supp. 1976); see case note, *Obscene Material as a Public Nuisance* (1977) 65 Cal.L.Rev. 330, fn. 2.) Other states have judicially applied their general nuisance statutes to obscenity cases. (E.g., *Grove Press, Inc. v. City of Philadelphia* (3d Cir. 1969) 418 F.2d 82 [applying Pa. law]; *Commonwealth v. Guild Theatre, Inc.* (1968) 432 Pa. 378 [248 A.2d 45]; *State v. A Motion Picture Entitled "The Bet"* (1976) 219 Kan. 64 [547 P.2d 760]; *State v. Gulf States Theatres of Louisiana, Inc.* (1972) 264 La. 44 [270 So.2d 547]; see also additional cases cited in Annot., 50 A.L.R.3d 969.)

First Amendment were first articulated in the seminal case of *Freedman* v. *Maryland* (1965) 380 U.S. 51, 58 [13 L.Ed.2d 649, 654, 85 S.Ct. 734].) They have been summarized by the high court as follows: "*First*, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second*, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third*, a prompt final judicial determination must be assured." (*Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546, 560 [43 L.Ed.2d 448, 460, 95 S.Ct. 1239].) Those standards have since been applied to a motion picture licensing or censorship case (e.g., *Teitel Film Corp.* v. *Cusack* (1968) 390 U.S. 139 [19 L.Ed.2d 966, 88 S.Ct. 754]; *New Rivieria Arts Theatre* v. *State* (1967) 219 Tenn. 652 [412 S.W.2d 890]), to regulation of live musical performances (*Southeastern Promotions, Ltd.* v. *Conrad, supra*, 420 U.S. 546), to seizure of imported materials by federal customs agents (*United States* v. *Thirty-Seven Photographs* (1971) 402 U.S. 363 [28 L.Ed.2d 822, 91 S.Ct. 1400]), to restriction of use of the mails by postal officials (*Blount* v. *Rizzi* (1971) 400 U.S. 410 [27 L.Ed.2d 498, 91 S.Ct. 423]), to seizure of obscene materials in criminal obscenity prosecutions (*Suki, Inc.* v. *Superior Court* (1976) 60 Cal.App.3d 616, 624 [131 Cal.Rptr. 615]; *People* v. *Superior Court (Loar)* (1972) 28 Cal.App.3d 600, 618 [104 Cal.Rptr. 876]), and to the granting of preliminary injunctions in public nuisance obscenity cases (e.g., *Grove Press, Inc.* v. *City of Philadelphia, supra*, 418 F.2d 82; *Commonwealth* v. *Guild Theatre, Inc., supra*, 248 A.2d 45; *State* ex rel. *Ewing* v. *"Without A Stitch"* (1974) 37 Ohio St.2d 95 [66 Ohio Ops.2d 223, 307 N.E.2d 911]; *State* v. *A Motion Picture Entitled "The Bet," supra*, 547 P.2d 760; *State* v. *Gulf States Theatres of Louisiana, Inc., supra*, 270 So.2d 547).

In *In re Ward, supra*, 82 Cal.App.3d 981, defendants argued that a preliminary injunction operated as an unconstitutional prior restraint because there was no guarantee that a final determination on the issue of obscenity would promptly follow the preliminary restraint. The court turned aside the argument holding that the following provisions of Code of Civil Procedure section 527, subdivision (a), did assure a prompt final judicial determination prior to the imposition of a final restraint: "'An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor.... When the cause is at issue it shall be set for trial at

the earliest possible date and shall take precedence of all other cases, except older matters of the same character, and matters to which special precedence may be given by law.'" (*In re Ward, supra,* 82 Cal.App.3d 981, 987.) The court thus concluded that state procedures provided a "statutory imperative,...requiring that matters wherein a preliminary injunction has been granted be given the highest priority for final determination." (*Id.*)

■ We agree with the *Ward* court that a preliminary injunction may issue in an action to enjoin the exhibition of allegedly obscene films as a public nuisance and that when a preliminary injunction has issued, state procedures assure prompt final adjudication of the issue of obscenity.[6] While under Code of Civil Procedure section 527, subdivision (a), either party would be entitled to bring the case to an early trial, in the context of an injunction to abate the exhibition of obscene materials, that burden is on the People and the failure to take such action would be a ground for the dissolution of the preliminary injunction.[7]

In the case at bench the preliminary injunction was issued in compliance with the constitutional standards governing prior restraints of presumptively protected materials. Before issuing the order, the court held extensive hearings over a period of four trial days during which the judge viewed eight of the films and the parties stipulated that those

---

[6]Cases involving seizure of allegedly obscene materials for evidentiary purposes prior to adjudication in a criminal prosecution for obscenity provide support for the proposition that preliminary injunctions may issue in public nuisance obscenity cases. As we explained in *People v. Superior Court (Loar), supra,* 28 Cal.App.3d 600, 615-618, allegedly obscene materials may be seized as evidence by the police and sequestered pending a determination of their obscenity in fact in a criminal proceeding provided that such seizure is accompanied by procedural safeguards to protect nonobscene materials under the First Amendment: There must be a speedy probable cause hearing on the issue of obscenity following seizure and a final determination on the merits must follow within a reasonable and definite time. (See *Freedman v. Maryland, supra,* 380 U.S. 51; *Marcus v. Property Search Warrant* (1961) 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708]; *Aday v. Superior Court* (1961) 55 Cal.2d 789, 799 [13 Cal.Rptr. 415, 362 P.2d 47], overruled on other grounds in *Hicks v. Miranda* (1975) 422 U.S. 332, 346, fn. 15 [45 L.Ed.2d 223, 237, 95 S.Ct. 2281]; *Suki, Inc. v. Superior Court, supra,* 60 Cal.App.3d 616, 624.) The injunctive procedure utilized in nuisance cases closely parallels the procedure just outlined for seizure and sequestration in criminal cases except that a prior judicial adversary hearing is held on the probability of plaintiff's success on the merits *before* any preliminary restraint.

[7]Rules 225 and 209 (a), of the Rules for Superior Courts provide appropriate means of complying with the mandate of Code of Civil Procedure section 527, subdivision (a), for an expeditious trial on the merits. (Cf. *Swartzman v. Superior Court* (1964) 231 Cal.App.2d 195, 199 [41 Cal.Rptr. 721].)

viewed were representative of all of the films sought to be enjoined. The court also permitted the parties to introduce such other evidence bearing on the issues as they desired. ■ (See fn. 8.) Defendants were thus accorded a full and fair judicial adversary hearing before the preliminary injunction issued.[8] ■ Although, as Judge Wisot correctly determined, the order to show cause why a permanent injunction should not issue was not the appropriate method of bringing the case to trial on the merits,[9] that portion of the order granting the preliminary injunction was surplusage because once the preliminary injunction issued, Code of Civil Procedure section 527, subdivision (a), mandated trial at the earliest possible date. Upon the People's failure to bring the case promptly to trial, defendants would have been entitled to have the preliminary injunction dissolved. The augmented record shows, however, that defendants, instead of insisting on a prompt trial on the merits, resisted the People's attempt to secure priority in trial setting on the ground that inasmuch as a preliminary injunction was in force the People were not entitled to priority. Defendants are thus in no position to complain that in the case at bench there has not as yet been a final determination of the merits.

---

[8]The People's contention that the hearing conducted by the trial court in passing upon the motion for a preliminary injunction amounted to a "trial" at which a "final judicial determination" of the issue of obscenity was made is without merit. The hearing on the preliminary injunction did not determine the ultimate fact of obscenity. A preliminary injunction, as its name suggests, is only tentative in purpose and scope; its purpose is to preserve the status quo pending a determination on the merits. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].) Consequently, the granting of a preliminary injunction is not a determination of the merits of the suit. (*Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 887 [125 Cal.Rptr. 915]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 843 [116 Cal.Rptr. 487]; *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 121 [25 Cal.Rptr. 595].) If the order granting the preliminary injunction constituted a determination of the merits of the lawsuit, there would be no need for a trial. (Cf. *People* v. *Sarnblad* (1972) 26 Cal.App.3d 801, 804-805 [103 Cal.Rptr. 211]; *People* v. *Golden* (1971) 20 Cal.App.3d 211, 215 [97 Cal.Rptr. 476].)

[9]An order requiring a defendant to show cause why a permanent injunction should not issue is not a proper method of bringing a case to trial. This is especially so where the fact of obscenity vel non must be litigated on the merits because the burden is on the state and not on the defendant to establish obscenity. (See Comment (1977) 28 Hastings L.J. 1333-1334. Cf. *Monterey Club* v. *Superior Court* (1941) 48 Cal.App.2d 131, 146-147 [119 P.2d 349].)

Judge Wisot ordered the December 18 hearing off calendar partly because of his belief that defendants were entitled to a jury trial on the issue of obscenity. Since Judge Wisot's order has not been appealed, the issue of whether a jury must be impanelled to decide the issue of obscenity in a public nuisance obscenity case is not before us. However, we think it proper to point out that in earlier cases our Supreme Court has held that juries are not always necessary to decide the issue of obscenity. (*In re Giannini* (1968) 69 Cal.2d 563, 575, fn. 7 [72 Cal.Rptr. 655, 446 P.2d 535], overruled on other

## II

### ABUSE OF DISCRETION

■ Defendants' contention that the People were collaterally estopped from seeking to enjoin the exhibition of "Deep Throat" and "Devil in Miss Jones" because they were adjudged nonobscene in a prior misdemeanor prosecution brought by the People in Orange County against defendants not parties to the instant action is without merit. It is the long settled rule that because of the difference in the degree of proof required in the two proceedings, an acquittal in a prior criminal case is not res judicata of the issue in a subsequent civil case. (*One Lot Stones* v. *United States* (1972) 409 U.S. 232 [34 L.Ed.2d 438, 93 S.Ct. 489]; *Beckner* v. *Sears, Roebuck & Co.* (1970) 4 Cal.App.3d 504, 509-510 [84 Cal.Rptr. 315]; *In re Anderson* (1951) 107 Cal. App.2d 670, 671 [237 P.2d 720]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 183, pp. 3324-3325.)

■ The contention that the People were collaterally estopped from asserting the obscenity of "Roller Babies" and "Summer of Laura" because those films were determined nonobscene in a prior civil abatement action against certain of the same defendants is equally without merit. A judgment in which these films were held nonobscene is currently pending on appeal in this court. (4 Civ. 19940.) It is an elementary principle of res judicata that the doctrine applies only to judgments and orders which are final. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 163, p. 3307.) A judgment is not final while an appeal therefrom is pending.

■ Also without merit is defendants' related contention that the court abused its discretion in granting the preliminary injunction because it is not reasonably probable that plaintiff will prevail in the action. It is ordinarily within the sound discretion of the trial judge to determine whether or not a preliminary injunction should issue. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d 512, 527; *Gosney* v. *State*

grounds in *Crownover* v. *Musick* (1973) 9 Cal.3d 405, 431 [107 Cal.Rptr. 681, 509 P.2d 497]; *People* v. *Noroff* (1967) 67 Cal.2d 791, 793 [63 Cal.Rptr. 575, 433 P.2d 479]; *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 911 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]), and that Justice Tobriner's dissent in *People* ex rel. *Busch* v. *Projection Room Theatre, supra,* 17 Cal.3d 42, rests partly on the fact that "[i]n a public nuisance proceeding...no jury is impanelled to determine whether a particular work is obscene under contemporary community standards." (*Id.,* at p. 73.)

*of California* (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) From the nature and content of the films as disclosed by the evidence adduced at the hearing on the preliminary injunction, there was no abuse of discretion in the instant case.

The order is affirmed.

Gardner, P. J., and McDaniel, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 8, 1980. Mosk, J., and Newman, J., were of the opinion that the petition should be granted.